Fuld, J.
After years of careful and detailed study of the problem of water pollution and its abatement (Report of Joint Legislative Committee, N. Y. Legis. Doc., 1927, No. 78; Reports of Special Committee on Pollution Abatement, N. Y. Legis. Docs., 1947, No. 59; 1948, No. 50; 1949, No. 51), the Legislature in 1949 enacted the Water Pollution Control Law (L. 1949, ch. 666; Public Health Law, art. 12, §§ 1200-1263). The act, designed to prevent pollution of the waters of the State, created the Water Pollution Control Board and directed it to develop a comprehensive program for the abatement and control of such pollution.
Acting under the authority of the statute, the Board held public hearings and in 1950 adopted classifications and standards of quality and purity (N. Y. Off. Comp, of Codes, Rules & Regulations, 6th Off. Supp., 1951, p. 208 et seq.). Then, in 1954, following extensive studies and surveys, and after further public hearings, it assigned classifications and standards of quality and purity to the waters within the Utica area (N. Y. Off. Comp, of Codes, Rules & Regulations, 10th Off. Supp., 1955, p. 300 et seq.). Some months later, in March of 1955, the Board submitted a pollution abatement plan to the City of Utica. It was noted in that plan that sewers were discharging untreated sewage from the City into the Mohawk River and the Barge Canal, and the suggestion was made that the City should proceed with the completion or revision of final plans, *167 approved six years before, for a proposed sewage treatment plant. When, however, two years more went by and nothing was done to abate the pollution caused by the sewage discharge complained of, the Board brought a proceeding against the City, charging it with violations of section 1220 of the Public Health Law.
The City thereupon instituted this article 78 proceeding, in the nature of a writ of prohibition, to restrain the Board from continuing with the hearing of charges against it upon the ground that the Water Pollution Control Law is unconstitutional. The court at Special Term dismissed the petition, the Appellate Division unanimously affirmed and the City prosecutes the present appeal as of right on constitutional grounds. Although it had originally urged additional infirmities, it is the City’s present position that the Water Pollution Control Law constitutes an invalid delegation of legislative authority, a grant of power, without adequate standards for the Board’s guidance, in violation of the State Constitution (art. Ill, § 1).
The Water Pollution Control Law opens with a clear statement of policy. “It is declared to be the public policy of the state of New York ”, the statute recites, “ to maintain reasonable standards of purity of the waters of the state consistent with public health and public enjoyment thereof, the propagation and protection of fish and wild life * * *, and the industrial development of the state, and to that end require the use of all known available and reasonable methods to prevent and control the pollution of the waters of the state of New York ” (Public Health Law, § 1200). The purpose of the law is then set out—“ to safeguard the waters of the state from pollution by: (a) preventing any new pollution, and (b) abating pollution existing when this chapter is enacted, under a program consistent with the [above] declaration of policy” (§ 1201). Various terms, such as “sewage,” “industrial waste” and “ other wastes,” are defined (§ 1202), and section 1209, reflecting an awareness of the complicated nature of the problem presented, goes on to recite that, “ due to variable factors, no single standard of quality and purity of the waters is applicable to all waters of the state or to different segments of the same waters” (§ 1209, subd. 1). The Board, and there is a direction for the use of qualified, fully trained, technical experts *168 in the field of environmental sanitation, pollution abatement and public health (§ 1206), is empowered to classify the waters of the State ‘ ‘ in accordance with considerations of best usage in the interest of the public ” (§ 1209, subd. 2). The factors to be weighed, in adopting the classification, include the physical nature of the stream itself, the character of the district bordering the stream, the uses that have been, or may be, made of said waters for any of the purposes stated and the extent of their present defilement or fouling (subd. 3). And, in establishing standards of purity and quality, it is further specified (subd. 5), consideration is also to be given to such other factors as “the extent” to which enumerated substances, expressed in terms of their physical, chemical or biological properties, “may be permitted in the water”.
And we would simply add that the Board’s classification of waters and the standards of quality and purity formulated by it are to be adopted only after public hearing, on notice, to the municipalities and all others concerned (§ 1209, subds. 2, 7), and that the Board’s action in this regard, as well as its powers of enforcement, are subject to judicial review (§ 1244).
The abatement and prevention of water pollution is a matter of state concern, and legislation designed to regulate and control such pollution is within the scope of the state’s police power. (See, e.g., Matter of Suffolk County v. Water Power & Control Comm., 269 N. Y. 158, 164-165; City of Niles v. Stream Control Comm., 296 Mich. 650, 654; Shirley v. New Hampshire Water Pollution Comm., 100 N. H. 294, 299-300; State Board of Health v. City of Greenville, 86 Ohio St. 1, 21-22; Board of Purification of Waters v. Town of Bristol, 51 R. I. 243, 245; City of Huntington v. State Water Comm., 137 W. Va. 786, 794 et seq.) Madison Metropolitan Sewerage Dist. v. Committee on Water Pollution, 260 Wis. 229, 249 et seq.) The City does not dispute this, and we turn immediately to a consideration of the question presented, namely, whether there has been an -unconstitutional delegation of legislative power, whether, in other words, the Water Pollution Control Law contains sufficiently definite standards to guide and limit the Board’s exercise of power.
The Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its *169 exercise. (See, e.g., Packer Collegiate Inst. v. University of State of N. Y., 298 N. Y. 184, 189-190; Noyes v. Erie & Wyoming Farmers Co-op. Corp., 281 N. Y. 187, 194; Matter of Small v. Moss, 279 N. Y. 288, 295, 298-299; Panama Refining Co. v. Ryan, 293 U. S. 388; see, also, 1 Benjamin, Administrative Adjudication [1942], p. 294.) That does not, however, mean that a precise or specific formula must be furnished in a field ‘ ‘ where flexibility and the adaptation of the [legislative] policy to infinitely variable conditions constitute the essence of the program.” (Lichter v. United States, 334 U. S. 742, 785.) It is enough if the Legislature lays down “ an intelligible principle ’ ’, specifying the standards or guides in as detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated. (See Lichter v. United States, supra, 334 U. S. 742, 785; American Power Co, v. S. E. C., 329 U. S. 90, 105; Buttfield v. Stranahan, 192 U. S. 470, 496; Texas Co. v. Montgomery [U. S. Dist. Ct., E. D. La.], 73 F. Supp. 527, 533-534, affd. 332 U. S. 827; Matter of Marburg v. Cole, 286 N. Y. 202, 212; Johnson v. Parsons, 207 Misc. 107, 113-114, affd. 285 App. Div. 601.) Obviously, the Legislature cannot “ constitutionally [be] required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel [the Legislature] to prescribe detailed rules ”. (American Power Co. v. S. E. C., supra, 329 U. S. 90, 105.) If it were otherwise, the court added, the “ legislative process would frequently bog down”. Or, to state the matter somewhat differently, as another court did in treating the Louisiana statute dealing with the very subject of water pollution, “it would have been impossible ”, considering the purpose and aim of the act, “ for the Legislature to prescribe a formula for the Commission’s guidance or to lay down rules with reference to harmful pollution, applicable to all waters: "What might be harmful pollution in one body of water might not be harmful pollution in another. Of necessity, a determination of the facts of what might constitute harmful pollution was left to a fact-finding group. The Legislature was compelled to create an agency to administer the act.” (Texas Co. v. *170 Montgomery, supra, 73 F. Supp. 527, 533-534, affd. 332 U. S. 827.)[1]
The job of water pollution control which confronted the Legislature was not an easy one. Conditions varied considerably in the different waters throughout the State and even in different segments of the same waters and, in consequence, the problem and its solution had to be approached in fairly general fashion. It was, therefore, proper and fitting for the Legislature to assign broad functions to the Board, particularly when it was contemplated and understood that its members were to bring to their work a familiarity with conditions which the individual legislators could not be expected to possess. (Cf. American Trucking Assns. v. United States, 344 U. S. 298, 310.) Having clearly expressed the policy underlying the law, the Legislature was privileged to leave to the Board the power to decide what properties indicate a polluted condition of a particular class of waters and to assign the appropriate classification to any water of the State. Such a power is no more than one to make subordinate rules and determine the facts to which the legislative policy is to apply. In other words, the Legislature is not required to break its plan down into fine detail in order to carry through its purpose of safeguarding the waters of the State.
As already abundantly demonstrated, where, as here, the Legislature has provided the manner in which the administrative body must act and has indicated the matters it must *171 consider—e.g., the physical factors actually listed as well as factors familiar to the art or science of environmental sanitation, pollution abatement and public health—as the predicate for its determination, the statute may not be stricken as an invalid delegation of legislative power. Having in mind the breadth of the problem of water pollution control, its technical and intricate character, the Legislature could hardly have been more specific in prescribing essential guides. As the United States Supreme Court expressed it, the Legislature “ legislated on the subject as far as was reasonably practicable,” the necessities of the case compelling it “to leave to executive officials the duty of bringing about the result pointed out by the statute. ” (Buttfield v. Stranahan, supra, 192 U. S. 470, 496.) To insist upon more precise standards than furnished by the statute before us would be tantamount to declaring that the Legislature’s power to control pollution of the State’s waters could not be effectively exercised.
The order of the Appellate Division should be affirmed, without costs.
Chief Judge Conway and Judges Desmond, Dye, Froessel and Burke concur with Judge Fuld; Judge Van Voorhis dissents and votes to reverse and to hold article 12 of the Public Health Law to be an unconstitutional delegation of power, due to the construction placed upon that statute by the court in Matter of Town of Waterford v. Water Pollution Control Bd. (5 N Y 2d 171, decided herewith), and for the reasons stated in his dissenting opinion in that case.
Order affirmed.

. It is of more than passing interest that every state in this country has legislation designating a board or a commission to deal with the problem of water pollution. And, in virtually all of the statutes, extensive powers are delegated to the agency, the provisions, in the main, being as broad and general as those found in New York’s Water Pollution Control Law, the standards prescribed no more precise or specific. (See, e.g., Connecticut [Pub. Acts, 1957, No. 364]; Illinois [Rev. Stat., 1957, ch. 19, § 145.1 et sag.]; Michigan [Stat. Ann., Vol. 2, tit. 3, ch. 13, § 3.521 et sag.]; Ohio [Page’s Rev. Code Ann., tit. 61, § 6111.01 et seq.]; Pennsylvania [Purdon’s Stats. Ann, (perm, ed.), tit. 35, § 691.1 et seq.; tit. 71, art. XVIII, § 461 et seq.]; Washington [Rev. Code, tit. 90, eh. 48, § 90.48.010 et seq.]; West Virginia [Code, 1955, ch. 16, art. 11, § 1401 et seq.]; Wisconsin [Stats. Ann., 1955, tit. XV, eh. 144, § 144.01 et seq.]; see, also, Report of Special Committee on Pollution Abatement, N. Y. Legis. Doc., 1949, No. 51, Appendix “A”, p. 71; Report of Special Committee on Pollution Abatement, N. Y. Legis. Doc., 1948, No. 50, Appendix “ G”, p. 98.)