Henry J. Kalinowski, J.
The defendant corporation is charged with violating section 3.4(D) (IV) of the Nassau County Fire Prevention Ordinance, article III., in that on the 22d day of January, 1974, at about 12:45 p.m., it unloaded a barge containing gasoline without using a floating boom of sufficient length to contain the barge.
The ordinance was adopted by the Board of Supervisors of the County of Nassau on October 30, 1972, in accordance with article XVII of the County Government Law of Nassau County (hereinafter referred to as the "County Charter”; L 1936, ch 879, as amd). The dock is located in the navigable and tidal waters of the south shore of Nassau County.
The necessary ordinance power granted to the County Board of Supervisors is found in section 1706 of the County Charter, and reads as follows:
"§ 1706. Fire prevention ordinances. The board of supervisors shall have power to establish by ordinance fire prevention regulations based on the recommendations of the county fire *262 commission which shall have effect throughout the whole county including the cities and villages therein”.
Pursuant to section 1706 of the County Charter, the County of Nassau duly adopted Ordinance No. 259-1972 entitled "An ordinance to amend ordinance 56-1962 entitled 'an ordinance for the prevention of fires by establishing uniform regulations for the control of fire hazards and for the enforcement of such regulations in accordance with the recommendations of the Nassau County fire commission’”.
The ordinance pertinent herein is designated as article III, section 3.4, and reads as follows:
"§ 3.4 Fire Protection. * * *
"(d) Spill containment protection. * * *
"(i) All marine terminals shall be provided with a floating boom of sufficient length to contain the largest boat, barge or vessel discharging flammable or combustible liquids at such terminal, and the necessary means available for the immediate deployment thereof.
"(ii) The boom shall be designed to extend above and below the surface of the water when placed in position for use. When more than one section of boom is required, it shall be capable of being connected to other sections to provide a positive seal for its full height and depth. * * *
"(iv) Prior to discharge of any flammable or combustible liquid from any boat, barge or vessel, the required booms shall be positioned to contain such boat, barge or vessel, and shall remain in this position until discharging operations have been completed, and all transfer lines disconnected. Any spillage of flammable or combustible liquid contained within the area encompassed by the boom shall be removed prior to the movement of the boat, barge, or vessel. Exceptions to the positioning of the boom may be made by the Fire Marshal whenever certain conditions would render it impractical or ineffective.”
The court finds after trial and beyond a reasonable doubt that a floatation collar (floating boom), did not contain the barge, and that no request was made on behalf of the defendant for an exception to boom. The record indicates that the weather at the time of unloading was clear and that both the wind and water were calm. The defendant’s terminal manager testified that at their terminal only oil barges are boomed, and *263 that on instructions from company superiors gasoline barges are never boomed.
The facts are essentially not disputed and defendant moves for a trial order of dismissal relying on three legal grounds:
1. That the Nassau County Fire Marshal does not have jurisdiction over the waters contiguous to Nassau County.
2. The ordinance on its face denies defendant equal protection under the law, and
3. That the ordinance is an unconstitutional exercise of police power in that it does not further the interest of public welfare.
The arguments for purposes of clarity will be treated in topical order.
I. The fire marshal does not have jurisdiction over waters contiguous to Nassau County.
Nassau County was established by an act of the State Legislature in 1898 (L 1898, ch 588). Section 1 provides, "All that territory now comprised within the limits of the towns of Oyster Bay, North Hempstead, and Hempstead in the county of Queens is hereby set off from the county of Queens and is erected into the county of Nassau”.
The areas of Hempstead and North Hempstead were originally known only as North Hempstead, and were erected by the Kieft Patent of 1644, the Nichols Patent of 1666 and the Dongan Patent of 1685. The south shore boundaries established by the patents extend to the high waterline of the Atlantic Ocean. The north shore boundaries extend to the high waterline of Long Island Sound, except as to the areas known as Manhasset Bay and Cold Spring Harbor. (See Grace v Town of North Hempstead, 166 App Div 844, affd 220 NY 628; Tiffany v Town of Oyster Bay, 209 NY 1.) In these two cases the courts have held that local jurisdiction over the Bay and Harbor is derived through the original patents which grant to the local body ownership in the beds of these waters. Regarding title to water beds (see Rogers v Jones, 1 Wend 237).
The record is not clear as to the body of water involved in the casé at bar; however, the court takes judicial notice of the Inwood area, and it appears that the dock is located at the head of the harbor of Jamaica Bay, a navigable tidal waterway. The court need not here determine the ownership of the bed in this waterway.
*264 It is argued that inasmuch as the south shore boundaries of Nassau County extend only to the waterline and since by its enabling legislation the Nassau County Fire Ordinance "shall have effect throughout the whole county including villages and cities” (Nassau County Charter, § 1706), that therefore the jurisdiction of the Fire Marshal is limited to the waterline but not beyond.
There is no argument that the south shore boundaries of Nassau County which abut the tidal waters terminate at the high water mark. This line of demarcation was aptly set forth in Sage v Mayor (154 NY 61) where the court stated, "when lands are described in a deed as bounded by a navigable river where the tide ebbs and flows, the title ends at the high-water mark, as the law stood at the date of the Nichols charter and as it stands to-day”.
The question then remains as to whether or not the County of Nassau has jurisdiction over the tidal waters adjacent to its shores.
It would appear that title to tidal waters has always been vested in the sovereign for the common good.
The court in Sage v Mayor (supra , p 70), in commenting on title to navigable waters stated, "the title to the tideway and to the land beyond continued in the English crown, as a public trust”. In Slingerland v International Contr. Co. (43 App Div 215, 220, affd 169 NY 60) the court confirmed this established principle when it stated, "The right of fishery, in navigable or tide waters, says Kent (3 Kent’s Com 418), stating what seems to have been the law always, is a common right”.
The State of New York succeeded to the title of the crown and to its powers, except as limited by its Constitution or laws (Langdon v Mayor, 93 NY 129; People v New York & Staten Is. Ferry Co., 68 NY 71).
The well-established principle, that a State, in the exercise of its police power, may establish rules applicable on land and water within its limits, even though these rules incidently affect maritime affairs has been maintained. (Askew v American Waterways Operators, 411 US 325.)
The State Legislature has the unquestioned prerogative to confer upon local municipalities the right to regulate their abutting navigable and tidal waters.
Pursuant to subdivision 4 of section 2 of the Navigation Law, " 'Navigable waters of the state’ shall mean all lakes, *265 rivers, streams and waters within the boundaries of the state and not privately owned, which are navigable in fact or upon which vessels are operated, except all tidewaters bordering on and lying within the boundaries of Nassau and Suffolk counties.”
Accordingly, the State Legislature, impliedly, if not expressly, "created the special exception whereby Nassau and Suffolk Counties (and their towns) may regulate their navigable waterways.”. (People v Levine, 74 Misc 2d 808, 810.)
II. The ordinance on its face denies defendant equal protection under the law.
The defendant argues that the ordinance as written denies the defendant equal protection of the law in that the "booming” is not required "whenever certain conditions would render it impractical or ineffective”, and that such exception was left to the determination of the County Fire Marshal without setting forth proper guidelines for such determination.
The trial testimony indicates that booming was generally not required when the winds were high, or when the water was choppy or when there was an accumulation of ice. It was interesting to note that the enforcement of the "exception” was on an honor system, and if a vessel was not boomed, the terminal manager need only send a postal card to the fire marshal explaining the reason therefor. However reasonableness in enforcement is not determinative of equal protection.
The People respond stating that the more recent cases allow a wider latitude of discretion to be vested in administrative agencies and that an agency may be empowered to determine what is necessary, appropriate, fit or suitable, sufficient, equitable or reasonable for specified purposes. In support of this position the People’s brief quotes the court’s language in Matter of City of Utica v Water Pollution Control Bd. (5 NY2d 164, 168-169): "The Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its exercise. (See, e.g., Packer Collegiate Inst. v University of State of N.Y., 298 NY 184, 189-190; Noyes v Erie & Wyoming Farmers Co-op. Corp., 281 NY 187, 194; Matter of Small v Moss, 279 NY 288, 295, 298-299; Panama Refining Co. v Ryan, 293 US 388; see, also, 1 Benjamin, Administrative Adjudication [1942], p 294.) That does not, however, mean that a precise or specific formula must be furnished in a field 'where flexibility and the adaptation of the *266 [legislative] policy to infinitely variable conditions constitute the essence of the program.’ (Lichter v United States, 334 US 742, 785.) It is enough if the Legislature lays down 'an intelligible principle’, specifying the standards or guides in as detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated. (See Lichter v United States, supra, 334 US 742, 785; American Power Co. v S. E. C., 329 US 90, 105; Butterfield v Stranahan, 192 US 470, 496; Texas Co. v Montgomery, [US Dist Ct, ED La], 73 F Supp 527, 533-534, affd 332 US 827; Matter of Marburg v Cole, 286 NY 202, 212; Johnson v Parsons, 207 Misc 107, 113-114, affd 285 App Div 601.) Obviously, the Legislature cannot 'constitutionally [be] required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel [the Legislature] to prescribe detailed rules’. (American Power Co. v S. E. C., supra, 329 US 90, 105.) If it were "otherwise, the court added, the 'legislative process would frequently bog down’.”
The People further argue that the ordinance is worded affirmatively, i.e., booming is required at all times unless an exception has been granted, and contrast , the affirmative with an ordinance worded in the negative, i.e., booming is not required unless so ordered by the fire marshal. In the latter the People concede that without proper guidelines there could be a denial of equal protection, but contend that on the authorities cited the present ordinance does not give rise to such denial. There is merit to the People’s position, however, in the American Waterways Operators v Askew (335 F Supp 1241, 1250, revd on other grounds 411 US 325) the court stated "The rule is well established that the unconstitutionality of a portion of a statute will not necessarily condemn the entire act”, and held that generability is permitted where all four of the following criteria are present:
1. The unconstitutional provision can be separated from the whole; 2. The legislative purpose can be accomplished independently of those which are void; 3. The good and the bad are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other; and 4. That an act complete in itself remains after the invalid provisions are stricken.
The ordinance in question meets all four requirements and *267 it is obvious that striking the exception clause would then leave a complete act requiring booming at all times and under all conditions, thus a finding by this court that the "exception” clause was unconstitutional would not aid in or be dispositive of the issue before the court and it accordingly need not be decided.
III. That the ordinance is an unconstitutional exercise of police power in that it does not further the interest of the public welfare.
The main thrust of this argument is that the booming of barges discharging gasoline, (as distinguished from kerosine, diesel oil, and fuel oil) enhances , the fire hazard and thus the means employed (booming) neither fulfills nor is it necessary to accomplish the purpose of the ordinance.
In Lawton v Steele (152 US 133, 136-137) it was stated, "the State may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests * * * To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts.”
In Goldblatt v Hempstead (369 US 590, 595) the court affirmed the above Lawton rule, and then stated, "Even this rule is not applied with strict precision, for this Court has often said 'debatable questions as to reasonableness are not for the courts but for the legislature’. E.g., Sproles v Binford, 286 US 374, 388.”
Based on the above it is apparent that this court may not intercede unless it finds that there is an arbitrary interference with defendant’s business or that the ordinance imposes unusual and unnecessary restrictions; if the reasonableness of the *268 required booming is merely debatable it will not be sufficient to render it void.
The burden is on the defendant as to "reasonableness”. The exercise of police power is presumed to be constitutionally valid; the presumption of reasonableness is with the State, and the exercise of police power will be upheld if any state of facts, either known or which could be reasonably assumed, affords support for it. (Goldblatt v Hempstead.)
The learned witnesses for the defendant do not dispute the need for booming a barge discharging kerosine, diesel fuel and/ or heating oils, but dispute its advisability as to gasoline.
One of defendant’s witnesses, a chemical engineer employed by defendant for the past 43 years in research and development of petroleum products, primarily gasoline and light hydrocarbons, and more recently in the field of static electricity and fire control, stated that gasoline is both volatile and flammable, whereas the other liquids discharged were only flammable; that gasoline evaporates slowly in a confined area; and that a thinner layer would evaporate more rapidly. In a confined area evaporation is generally considered to be from one-quarter inch to one-half inch per hour, and therefore by booming, the period of inflammability is increased. He further testified that a small spill of gasoline allowed to dissipate on the water would evaporate within 15 or 20 minutes to a point where it could not be ignited, and that gasoline has a tendency to spread in small areas up to 40 feet per minute in still water, and that agitation would increase its spreading. On the above figures, even a small spill would be subject to ignition over an area of 600 to 800 feet for a period of 15 to 20 minutes.
Without question the confinement of gasoline places the barge and the dock area in greater peril, but then are not the dock facilities prepared for such accidents.
The waterways in our county are now congested with boat traffic. Many boats are skippered by reckless young men and women, and others contain passengers who are oblivious to the very basic rules of boating safety. To expect caution in this area would be the height of optimism.
The defendant also relies on the testimony that no other municipal, State, Federal or international regulations make mandatory the booming of gasoline vessels during loading or unloading. It is also specifically mentioned that in the preamble to the United States Coast Guard Prevention Regulations *269 under sections 154 to 156 of title 33 of the United States Code, it is indicated that booming of spilled products was not always effective unless booms were deployed in a proper manner and as a result booming was not placed into the regulations as a mandatory requirement.
A State, or a political subdivision thereof, may however, as to pollutants, provide requirements and penalties similar to 'those imposed by Federal statute, and may set forth additional requirements and penalties (Askew v American Waterways Operators, 411 US 325).
There is also in evidence a letter dated July 29, 1974, from the fire marshal to the Coast Guard Port Captain in which the fire marshal indicates in paragraph three that "I was in agreement with Commander Kneip that in open water a dispersement of the gasoline would result in rapid evaporation and would lessen the hazard, but I must explain that until such time that I receive a written directive in support of this position, I have no alternative but to require compliance with the Ordinance.” It is clear that the fire marshal realizes he cannot substitute his judgment for that of the duly recognized legislative body.
After review of the record and giving to the defendant every favorable inference, the court is not convinced that the ordinance does not at least to some extent fulfill its purpose as a safety measure. The court believes that the ordinance needs review and revision, and on this record the need to boom gasoline barges is debatable.
The motion is denied and the defendant is found guilty as charged and will appear for sentencing on March 21, 1975.