OPINION OF THE COURT
D. Vincent Cerrito, J.
During fiscal year 1976-1977, the City of New York through its Department of Environmental Protection maintained and operated 12 sewage treatment plants. At the close of the fiscal year, the city, pursuant to ECL 17-1905, submitted timely applications to the respondent for an operation and maintenance grant for each plant. On November 26, 1979 the respondent denied eight of the applications.
This CPLR article 78 proceeding ensued. The city claims the State’s determinations were arbitrary and capricious and in excess of authority granted by law in that they were *171 factually incorrect and were based on standards and requirements which exceeded those established in the statute. In addition, the city claims the State failed to provide any mechanism or forum for it to meet the evidentiary burden which the statute places upon it (ECL 17-1905, subd 1, par c).
This latter claim is not correct. ECL 17-0907 directs the Commissioner of Environmental Conservation (Commissioner) to “grant a hearing to any person not previously heard in connection with the making of a determination, or order, who within twenty days after service upon him of a copy of a notice, order or determination of the commissioner” files a petition challenging the determination.
The reason the city was not afforded a hearing was due to its failure to file a timely petition. It attempts to explain this oversight by submitting a hearsay statement to the effect that one of its representatives made an inquiry of a representative of the State as to whether an administrative procedure existed under which the city could appeal the State’s determinations. He was allegedly advised that no such procedure existed.
This is essentially an equitable estoppel argument which, in exceptional cases, is applicable against governmental bodies (see Matter of Hauben v Goldin, 74 AD2d 804; Brennan v New York City Housing Auth., 72 AD2d 410). This is not one of those cases however, because the opinions or representations of an employee cannot estop a governmental body from asserting its rights under a statute (see City of New York v Wilson & Co., 278 NY 86; 21 NY Jur, Estoppel, § 81).
Estoppel not being available, the city is not entitled to a hearing due to its failure to abide by the clear terms of the statute.
ECL 17-1905 establishes a program for assisting municipalities in the operation of sewage treatment plants. It specifically provides in subdivision 2 that: “Within the limits of the annual appropriation made by the legislature, the commissioner shall apportion and approve for payment state assistance to each municipality which * * * operates and maintains * * * sewage treatment works during all or *172 part of a fiscal year of such municipality, in accordance with qualifications for state assistance applicable to the operation and maintenance of such works”.
To qualify for State assistance, a municipality must submit: “(1) audited costs of sewage treatment plant operation, (2) standard reports with respect to such plant performance and effect on receiving waters, (3) evidence that the sewage treatment plant is under the supervision of an operator qualified pursuant to section (f) of chapter 11 of the State Sanitary Code, (4) evidence that the sewage from the tributary area reaches such sewage treatment plant for processing, within practical limitations, (5) evidence that such sewage treatment plant is and has been constructed in substantial compliance with the plans approved by and on file with the commissioner or with approved amendments thereto.” (ECL 17-1905, subd 1, par c.)
These items are further amplified in a series of regulations which the Commissioner has promulgated (6 NYCRR 651.50 et seq.).
In the event a municipality fails to operate and maintain its sewage treatment plant in accordance with the qualifications for State assistance, the Commissioner is directed to deny it State assistance (ECL 17-1905, subd 4, par b).
The Commissioner denied assistance to the city primarily on the ground the eight plants were not operated in conformance with some of the regulations. The city contends this was improper because ECL 17-1905 (subd 1, par c) specifically defines the qualifications for State assistance, and does not give the Commissioner the authority to impose additional ones by means of rules and regulations.
This argument is belied by the statute. It directs the Commissioner to promulgate “such rules and regulations * * * as may be necessary, proper or desirable to carry out effectively the provisions of this section, including, but not limited to, standards of operating efficiency for sewage treatment works, based on the best usage of the receiving waters, type of treatment provided and available dilution.” (ECL 17-1905, subd 4, par d.)
In view of such explicit language, the Commissioner’s authority to promulgate rules and regulations cannot be *173 seriously questioned. What is more pertinent, however, is whether the regulations themselves are valid.
The validity of an administrative regulation depends upon the nature of the subject matter, the breadth of the legislatively conferred authority and whether it is in harmony with the statute whose purpose it seeks to further (Matter of City of New York v State of New York Comm. on Cable Tel., 47 NY2d 89; Matter of Gabel v Toia, 64 AD2d 267).
Due to the complexity of the problem of water pollution control (Matter of City of Utica v Water Pollution Control Bd., 5 NY2d 164), when the Legislature decided to enact the Water Pollution Control Law (ECL art 17) it chose to state the act’s purpose in general terms and to describe broadly the powers and duties of the Commissioner (ECL 17-0103, 17-1905).
Acting within this broad grant of authority, the Commissioner has promulgated regulations which do amplify the qualifications set forth in the statute and in some instances impose conditions not mentioned therein.
When these regulations are measured against the purpose of the act, which is “to safeguard the waters of the state from pollution by preventing any new pollution and abating pollution existing” when the act’s predecessor was enacted (ECL 17-0103), it cannot be said they are not in harmony with it. Hence, I find them to be valid.
Having determined that the Commissioner has the authority to promulgate regulations and that they are valid, I now reach the issue of whether his denial of assistance was arbitrary and capricious.
The arbitrary or capricious test chiefly relates to whether a particular administrative action should have been taken or is justified or is without foundation in fact (Matter of Pell v Board of Educ., 34 NY2d 222, 231). Thus to prevail, the petitioner has the burden of establishing the lack of rationality of the Commissioner’s determinations (6 NY Jur 2d, art 78, § 234).
In my opinion the petitioner has not met this burden. The record discloses the Commissioner based his determinations upon an analysis and evaluation of the petitioner’s *174 applications, the monthly operating reports submitted by petitioner’s engineer on behalf of the applications, the reports of inspections made by employees of the Regional Office of the Department of Environmental Conservation and the recommendations of the Regional Director or engineer in charge of operation and maintenance.
The city claims it can meet its burden if it is given the opportunity to adduce additional evidence. That is not the issue however. The city’s burden is to show that the Commissioner’s determinations are not supported by the record that was before him. The city has not done this.
Accordingly, I will dismiss the petition as I find the Commissioner’s determinations have a rational basis.