In the Matter of EDWARD NICHOLAS et al., Appellants, v ALFRED E. KAHN, as Chairman of the Public Service Commission, et al., Respondents. (Proceeding No. 1.)

In the Matter of HOWARD J. READ, Appellant, v ALFRED E. KAHN, as Chairman of the Public Service Commission, et al., Respondents. (Proceeding No. 2.)

Third Department, May 11, 1978

### APPEARANCES OF COUNSEL

*Roemer & Featherstonhaugh (Michael J. Smith* of counsel), for Edward Nicholas and others, appellants.

*Garry, Cahill, Edmunds & Breslin* for Howard J. Read, appellant.

*Peter H. Schiff (Charles R. Gibson* of counsel), for respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

We are called upon to determine if certain rules, promulgated by the Chairman of the Public Service Commission (Chairman) governing personal investments of employees of the Public Service Commission (PSC) and the Public Service Department (PSD), as well as investments of members of their families, are beyond the authority of the Chairman as delegated by the provisions of section 9 of the Public Service Law and section 74 of the Public Officers Law.

There are eight rules. The first five rules prohibit petitioners, their spouses and/or unemancipated children from having any interest, direct or indirect, in Rule (1) companies subject to the jurisdiction of the PSC, Rule (2) utility companies in other States not subject to the jurisdiction of the PSC, Rule (3) companies which manufacture and/or supply major electric utility equipment, Rule (4) companies which sell utility fuels, and Rule (5) companies which manufacture and/or supply telephone terminal equipment or specialized communications

common carrier services. Rule 6 provides that a person employed by either the PSC or PSD before the effective date of the rules may request an exemption from Rules 2, 3, 4 or 5 either for himself or for his wife and/or unemancipated children or an exemption from Rule 1 for his wife and/or unemancipated children by disclosing the names of the companies in which he, his wife and/or unemancipated children have an interest and the extent of that interest. Applications for exemption are to be made to the Secretary of the PSC. Should the Secretary deny the application, an appeal to the Chairman may be taken and his decision is final. If exemption is denied, the employee must divest himself of his investment interests.* Rule 6 does not provide any method by which an employee can obtain an exemption from having to divest his holdings in a company falling within the category covered by Rule 1. Rules 7 and 8 deal with enforcement and violations of Rules 1 through 5.

Section 9 of the Public Service Law, generally, denies eligibility for employment or appointment to the PSC to any individual who holds any official relation to any person or corporation subject to the supervision of the commission, or who owns stocks or bonds of any such corporation. Additionally, subdivision 3 of section 74 of the Public Officers Law provides in paragraph g that "[a]n officer or employee of a state agency should abstain from making personal investments in enterprises which he has reason to believe may be directly involved in decisions to be made by him or which will otherwise create substantial conflict between his duty in the public interest and his private interest", and in paragraph h that "[a]n officer or employee of a state agency * * * should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust." Section 74 of the Executive Law authorizes the Attorney-General to establish an advisory committee on ethical standards and further authorizes that committee to advise and assist any other State agency in establishing rules and regulations relating to possible conflicts between private interests and public duties of State emloyees.

That these cited statutory provisions express a legitimate

---

* Petitioners *Nicholas* (Rule 1), *Grady* (Rule 1), *Teumim* (Rules 1 and 2), *Guttman* (Rule 3) and *Read* (Rule 4) appealed denials for exemptions to the Chairman. Their appeals were denied.

State interest in the financial privacy of employees working in a State agency charged with critical and sensitive duties of supervision cannot be doubted *(Matter of Levine v Whalen,* 39 NY2d 510, 515), and that these same statutes are constitutional is also beyond question *(Evans v Carey,* 40 NY2d 1008, affg 53 AD2d 109; *Rapp v Carey,* 44 NY2d 157; *Hunter v City of New York,* 44 NY2d 708).

While legislation may constitutionally confer discretion upon an administrative agency, it follows that a precise or specific formula need not be furnished in a field, as here, where flexibility in fashioning rules in furtherance of that legislation is desirable in light of the complexities extant in the area sought to be circumscribed *(Matter of Levine v Whalen, supra,* p 515). In many cases, as here, the Legislature may enact statutes in broad outline, leaving administrative details to the appropriate enforcing administrative official. Both section 9 of the Public Service Law and section 74 of the Public Officers Law are extremely broad and merely posit ethical positions to be assumed by officers and employees of State agencies that would best deter suspicion that their private interests are at war with their public duties. The details of defining those positions in relation to employees' private investments were left to the PSC Chairman. Therefore, the extent of our review is clear. Are the rules promulgated by the Chairman legislative in nature so as to offend the constitutional requirement that the making of laws be the sole responsibility of the Legislature (NY Const, art III, § 1)? We hold that Rules 1 through 5 extend and expand the delegated authority of the generic statutes (Public Service Law, § 9; Public Officers Law, § 74) and are an unwarranted exercise of legislative power *(Rapp v Carey, supra).*

Rule 1 prohibits any employee of the PSC or PSD from holding any stocks or bonds in a company subject to the jurisdiction of the commission. If he had such holdings prior to the effective date of the rule (Nov. 20, 1974), he must divest himself of such investments. This directive expresses and furthers a legitimate State concern that employees of a regulatory State agency not be part owners of a supervised company. However, Rule 1 is footnoted to require that any employee in place as of the effective date of the rule and whose wife or minor children have such holdings must apply for an exemption in order that these dependents can continue their investments. There can be no exemption for the employee.

Rule 6 prohibits any investments by an employee, his wife or unemancipated children in any companies covered by Rules 2, 3, 4 and 5, and if any employee or his immediate dependents had such holdings prior to November 20, 1974, such employee must apply for exemptions for himself, wife and minor children by following the procedure described in subdivision (b) of Rule 7. Rule 1, as footnoted, and Rules 2 through 5 contain managerial directives beyond the authority of the Chairman and beyond existing legislative requirements. While subdivision 2 of section 74 of the Public Officers Law does forbid an employee from having an *indirect interest* which is in *substantial conflict* with the proper discharge of his duties, it does not prescribe that an indirect interest is one held by a wife or minor child, nor does it state that such holdings are prohibited per se. Similarly, there is nothing in paragraphs g or h of subdivision 3 of section 74 of the Public Officers Law prohibiting such investments. Paragraph g concerns itself with *personal* investments of an employee and h only encourages employees to "endeavor to pursue a course of conduct which will not raise suspicion among the public". For the Chairman to decide that the only "indirect interest" is investments in companies, either directly or peripherally regulated by the PSC, by wives or minor children of employees of that agency, is arbitrary and expands legislative requirements because such a determination excludes all other possible "indirect interests". More importantly though, this designation infects subdivision (b) of Rule 7 to the extent that the Secretary and Chairman in reviewing applications for exemptions are confined solely to considerations of whether the amount and extent of equity holdings in regulated companies by spouses and minor children are minimal enough to constitute good cause for exemption. This imposes purely subjective standards of review that must be stamped as arbitrary *(Matter of Levine v Whalen,* 39 NY2d 510, *supra).* Though these subjective standards may in themselves nullify the entire regulatory scheme (cf. *Matter of Levine v Whalen, supra)* they deprive the Secretary and Chairman in reviewing exemption applications of any objective standards to determine if certain stock ownership creates the requisite "substantial conflict" demanded by section 74 (subd 3, par g) of the Public Officers Law. Therefore, these rules also expand existing legislation because they do not guarantee that only investments creating a "substantial conflict" of interest will be barred.

In marked contrast are subdivisions 4 and 6 of section 73 of the Public Officers Law. Subdivision 4 precludes any officer or employee who owns more than 10% of the stock of a regulated corporation from selling any goods or services having a value in excess of $25 to a State agency unless pursuant to contract awarded after competitive bidding. Subdivision 6 of section 73 requires members of the Legislature to annually report the financial interest of themselves, spouses and minor children in any activity subject to the supervision of a regulatory agency and whether such interest is over or under $5,000 in value. These are objective standards and no less is required of promulgated rules implementing underlying legislation. Pure subjectivity, as encompassed within subdivision (b) of Rule 7, allows an impermissible exercise of discretion based on the reviewing officer's sense of right or wrong. While this unlimited discretionary authority is to be condemned, the generic legislation (Public Service Law, § 9; Public Officers Law, § 74, subd 3) must also be faulted. Neither statute, other than declaring that ethical standards of agency employees require that private investments not create a substantial conflict with their duties, furnish any rules or principles to guide the administrative officer in promulgating rules in furtherance of the laudatory statutory purpose *(Matter of City of Utica v Water Pollution Control Bd.,* 5 NY2d 164; *Matter of Barton Trucking Corp. v O'Connell,* 7 AD2d 36, revd on other grounds 7 NY2d 299). There is no "clearly delimited field of action" *(Packer Coll. Inst. v University of State of N. Y.,* 298 NY 184, 189). Thus, the delegated discretion is unfettered and the attempt of the PSC Chairman to supply specifics is an impermissible extension and expansion of his delegated authority *(Rapp v Carey,* 44 NY2d 157, *supra; Matter of Redfield v Melton,* 57 AD2d 491).

Accordingly, since we hold that the enactment of Rules 1 through 5 is an unwarranted exercise of legislative power *(Rapp v Carey, supra),* and, further, that the standards of review produced by subdivision (b) of Rule 7 are wholly subjective, we conclude that the entire regulatory scheme is unconstitutional.

■ Since the ultimate relief sought is a declaration of invalidity of promulgated rules, this proceeding should be converted to an action for declaratory judgment *(Cantlin v State Liq. Auth.,* 16 NY2d 155; CPLR 103, subd [c]).

The judgments should be reversed, on the law, without

costs, petitions should be reinstated, and judgment should be directed to be entered declaring that Rules 1 through 8 promulgated by the Chairman of the Public Service Commission, dated June 8, 1976, effective June 18, 1976, are unconstitutional.

GREENBLOTT, SWEENEY, STALEY, JR., and MAIN, JJ., concur.

Judgments reversed, on the law, without costs, petitions reinstated, and judgment directed to be entered declaring that Rules 1 through 8 promulgated by the Chairman of the Public Service Commission, dated June 8, 1976, effective June 18, 1976, are unconstitutional.