No. 64,936

GUARDIAN TITLE COMPANY and WICHITA TITLE ASSOCIATES, INC., *Appellees*, v. W. FLETCHER BELL, as Commissioner of Insurance of the State of Kansas, *Appellant*.

(805 P.2d 33)

Opinion filed January 18, 1991.

*Louis F. Eisenbarth*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Derenda J. Mitchell* and *Jeffrey W. Jones*, of the same firm, and *Timothy G. Elliott*, special assistant attorney general, Kansas Insurance Department, were with him on the briefs for appellant.

*Phillip A. Miller*, of Watson, Ess, Marshall & Enggas, of Olathe, argued the cause, and *Steven B. Moore*, of the same firm, was with him on the brief for appellees.

*Thomas D. Kitch* and *David G. Seely*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, were on the brief for *amicus curiae* Kansas Association of Realtors.

*Donald Patterson* and *Steve R. Fabert* of Fisher, Patterson, Sayler & Smith, of Topeka, were on the brief for *amicus curiae* Kansas Land Title Association.

The opinion of the court was delivered by

ABBOTT, J.: This is a title insurance law case in which the trial court held K.S.A. 1989 Supp. 40-2404b(14)(f) and (g) unconstitutional.

Section 2404b prohibits unfair methods of competition and deceptive acts or practices in the insurance industry. In 1989 House Bill No. 2502 added subparagraphs (e), (f), and (g) to subsection 14 of K.S.A. 40-2404b. Subparagraph (e) was not challenged, but needs to be considered in determining whether (f) and (g) are unconstitutional.

The subparagraphs provide:

"(e) No title insurer or title agent may accept any order for, issue a title insurance policy to, or provide services to, an applicant if it knows or has reason to believe that the applicant was referred to it by any producer of title business or by any associate of such producer, where the producer, the associate, or both, have a financial interest in the title insurer or title agent to which business is referred unless the producer has disclosed to the buyer, seller and lender the financial interest of the producer of title business or associate referring the title insurance business.

"(f) No title insurer or title agent may accept an order for title insurance business, issue a title insurance policy, or receive or retain any premium, or charge in connection with any transaction if: (i) The title insurer or title agent knows or has reason to believe that the transaction will constitute *controlled business* for that title insurer or title agent, and (ii) 20% or more of the gross operating revenue of that title insurer or title agent during the six full calendar months immediately preceding the month in which the transaction takes place is derived from *controlled business*. The prohibitions contained in this subparagraph shall not apply to transactions involving real estate located in a county that has a population, as shown by the last preceding decennial census, of 10,000 or less.

"(g) The commissioner shall adopt any regulations necessary to carry out the provisions of this act." (Emphasis added.)

The Insurance Commissioner then adopted K.A.R. 40-3-43 (1990 Supp.), which provides, in part:

"(f) 'Controlled business' means any portion of a title insurer's or title agent's business in this state that was referred by any producer of title business or by any associate of such producer, where the producer of title business, the associate, or both, have a financial interest in the title insurer or title agent to which the business is referred."

Guardian Title Company and Wichita Title Associates, Inc., (petitioners) filed this case seeking a temporary injunction against Fletcher Bell, Commissioner of Insurance, (respondent) arguing that House Bill 2502 was unconstitutional. They also sought a declaratory judgment that subparagraphs (f) and (g) were unconstitutional and sought a permanent injunction against their enforcement.

The trial court found that subparagraph (f) violates the Due Process Clause of the United States Constitution and the Due Process and Equal Protection Clauses of the Kansas Constitution, Kansas Bill of Rights § 18 and Kansas Bill of Rights § 1, and that subparagraph (g) violates the constitutional requirement of separation of powers found in Article 2, Section 1 of the Kansas Constitution. The trial court also permanently enjoined the Insurance Commissioner from enforcing subparagraph (f) and any regulations promulgated by the Commissioner relating to K.S.A. 1989 Supp. 40-2404b(14)(f).

In enjoining enforcement of the provisions, the trial court found that there is no statutory or judicial definition of the term "controlled business" and that there is no technical meaning of the term that is commonly understood by persons in the title insurance industry in Kansas. The trial court found it significant that legislation in numerous other states has used the phrase "controlled business" and that most other states have provided an expansive definition of "controlled business."

The trial court also concluded that the subparagraphs in issue lack sufficient standards to satisfy principles of nondelegation under article 2, § 1 of the Kansas Constitution and that the legislature cannot delegate to an administrative agency the task of defining an unconstitutionally vague term, because to do so violates the separation of powers doctrine (Kan. Const. art. 2, § 1). In addition, the trial court held that the classification in subsection (14)(f) exempting counties of 10,000 or less from the bill's prohibitions violates the equal protection clause because it is not rationally related to any legitimate state purpose.

### 1. Vagueness Argument

The constitutionality of a statute is presumed and all doubts must be resolved in favor of its validity. Before the statute may be struck down, it must clearly appear the statute violates the constitution. It is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *State v. Huffman,* 228 Kan. 186, Syl. ¶ 1, 612 P.2d 630 (1980).

Most challenges against statutes for vagueness are against criminal statutes. With a criminal statute,

"[t]he test to determine whether a criminal statute is unconstitutional by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." *State v. Meinert*, 225 Kan. 816, Syl. ¶ 2, 594 P.2d 232 (1979).

K.S.A. 1989 Supp. 40-2404b is not a criminal statute, although it is penal in nature because K.S.A. 1989 Supp. 40-2407 provides that the commissioner may levy penalties against companies engaging in practices prohibited by section 40-2404b. The same standard is not applied, however, when the statute regulates a business as is applied when the statute is criminal or is regulating a constitutionally protected interest such as free speech. In *In re Brooks*, this court said, "In determining constitutional challenges for vagueness, greater leeway is afforded statutes regulating business than those proscribing criminal conduct." *In re Brooks*, 228 Kan. 541, 544, 618 P.2d 814 (1980) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 [1972]).

A common-sense determination of fairness is the standard for determining whether a statute regulating business is unconstitutional for vagueness, *i.e.*, can an ordinary person exercising common sense understand and comply with the statute? If so, the statute is constitutional. *Harris v. McRae*, 448 U.S. 297, 311 n.17, 65 L. Ed. 2d 784, 100 S. Ct. 2671, *reh. denied* 448 U.S. 917 (1980).

In order to determine if this statute is vague, this court is called upon to interpret the statute, because if there is a valid interpretation of the statute, there is no reason to declare it unconstitutional. Interpretation of a statute is a question of law, not a question of fact. Here, the only persons subject to the statute are title insurers and title agents. If the statute gives fair notice to those subject to the statute, the fact that academic questions might be posed over the statute's meaning will not defeat its validity. See *Communications Ass'n v. Douds*, 339 U.S. 382, 412-13, 94 L. Ed. 2d 925, 70 S. Ct. 674, *reh. denied* 339 U.S. 990 (1950).

The trial court found that this statute is vague because "controlled business," as used in subparagraph (f), is not expressly defined. Respondent suggests that subparagraph (e) defines "controlled business" as business which has been referred to the title insurer or title agent by a producer of title business who also has a financial interest in the title insurer or agency receiving the referral.

The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. "In construing statutes, the legislative intention is to be determined from a general consideration of the entire act." *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987). In order to construe one part of a statute, it is permissible to look at other parts of it. "The several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire statute if it is reasonably possible to do so." *Easom v. Farmers Insurance Company*, 221 Kan. 415, Syl. ¶ 3, 560 P.2d 117 (1977).

In this case, subparagraph (e) sets forth the requirements applicable when a customer is referred to a title insurer by one having a financial interest in the title insurer—the financial interest must be disclosed. Then, the other major part of the amendment to the act, subparagraph (f), goes on to set forth prohibitions against some, but not all, transactions that would constitute "controlled business."

These two parts are compatible if "controlled business" is defined as referred business by one who has a financial interest in the title insurer. Subparagraph (e) sets forth general requirements for such transactions. Subparagraph (f) sets forth specific limits. It is not surprising that the two major parts of a bill amending a statute would both refer to the same subject.

The testimony heard by House and Senate committees supports the conclusion that "controlled business" in subparagraph (f) is defined by subparagraph (e). Dick Brock, of the Insurance Department, testified to the House Committee on Insurance in favor of the bill. He testified that the Department had been studying complaints about persons offering or receiving special inducements, rebates, and other advantages in the sale or placement

of title insurance that is not generally available to others similarly situated, causing increased costs to consumers. (Testimony by Dick Brock before the House Insurance Committee, March 2, 1989.) One of the proposals reached by the study group was to enact the prohibitions contained in subparagraphs (e), (f), and (g) limiting controlled business which, he said, generally meant "a situation where a person can direct or cause a prospective purchaser to be directed to a title insurance agent or company in which the person making the referral has a financial interest."

Testimony against portions of the bill also supports the proposition that "controlled business" means referrals by one having a financial interest. These witnesses obviously realized the meaning of subparagraph (f). See, *e.g.*, Testimony of Karen McClain France, Kansas Association of Realtors, before the House Insurance Committee, March 2, 1989, attachment 6, p. 2.

The minutes of the Senate Financial Institutions and Insurance Committee reveal express statements by legislators showing their concerns and what they hoped to accomplish with the bill. One senator said the problem with the controlled business situation is that it is "anti-competitive—the title companies try to steer customers to the title company they own and they have no incentive to look out for the consumer." Minutes of the Senate Committee on Financial Institutions and Insurance, March 23, 1989.

Petitioners argue that constitutional requirements are not satisfied by looking at legislative history to overcome a vagueness argument. This statute does not apply to the average citizen. It applies to a heavily regulated industry that has specialized knowledge of the industry and its terms. Obviously, different states have defined "controlled business" differently, but with a common theme.

We also believe the vagueness argument cannot be completely separated from the separation of powers argument that is addressed later in this opinion. If the statute is not as clear and concise as one would like it to be, but gives sufficient guidance so as not to violate the separation of powers doctrine, then the regulation eliminates any question as to the meaning of a "controlled business."

Although the amendments to section 40-2404b would have been clearer if an express definition of "controlled business" had been included, when read together, subparagraphs (e) and (f) of section 14 indicate a legislative intent to limit business which has been referred to the title insurer or title agent by a producer of title business who also has a financial interest in the title insurer or agency receiving the referral. Thus, the trial court erred in holding subparagraph (f) unconstitutionally vague.

## 2. Separation of Powers

Respondent argues that the trial court erred in holding that subparagraphs (f) and (g) violate the separation of powers doctrine because they lack sufficient standards to govern the rulemaking power of the insurance commissioner. Having determined subparagraph (f) not to be vague, and finding that it therefore provides sufficient guidance to the agency to carry out the directives of (g), this issue is moot. However, we believe a discussion of applicable law to be worthwhile because to some extent this issue cannot be divorced from the vagueness issue. We live in an increasingly complex society. To expect the legislature to have the time and expertise to deal with minute details statutorily is not realistic.

In the case of *In re Sims*, 54 Kan. 1, 11, 37 Pac. 135 (1894), this court said that in its judgment a strict application of the separation of powers doctrine is inappropriate today in a complex state government where administrative agencies exercise many types of power and where legislative, executive, and judicial powers are often blended together in the same administrative agency.

In the 97 years that have passed since *In re Sims*, this court has consistently stated that an absolute separation of powers is neither practical nor possible. *State, ex rel. Schneider, v. Bennett*, 219 Kan. 285, 288, 547 P.2d 786 (1976); see *State, ex rel., Taylor v. Railway Co.*, 76 Kan. 467, 474, 92 Pac. 606 (1907), *aff'd* 216 U.S. 262, 54 L. Ed. 472, 30 S. Ct. 330 (1910).

What is required is that a statute express the law in general terms and delegate the power to apply it to an executive agency under standards provided by the legislature. *Wesley Medical Center v. McCain*, 226 Kan. 263, 270, 597 P.2d 1088 (1979). This has been the fundamental rule since early statehood. See *Coleman v. Newby*, 7 Kan. 82, 89 (1871).

Where flexibility in fashioning administrative regulations to carry out statutory purpose is desirable in light of complexities in the area sought to be regulated, the legislature may enact statutes in a broad outline and authorize the administrative agency to fill in the details. *Nicholas v. Kahn*, 62 App. Div. 2d 302, 306, 405 N.Y.S.2d 135 (1978), *modified* 47 N.Y.2d 24, 416 N.Y.S.2d 565, 389 N.E.2d 1086 (1979).

In testing a statute for adequacy of standards, the character of the administrative agency is important. See *Warren v. Marion County*, 222 Or. 307, 314-15, 353 P.2d 257 (1960). Here, we are dealing with the insurance commissioner, an expert in regulation of the insurance industry, with a large staff and paid consultants available. The insurance commissioner is charged with regulating a huge, complex industry, and to require explicit, definitive statutes would severely impede, if not make impossible, the regulation of the insurance industry. What is a sufficient standard must necessarily vary somewhat according to the complexity of the area sought to be regulated. See *Senior Citizens League v. Department of Social Secur.*, 38 Wash. 2d 142, 161, 228 P.2d 478 (1951); *Quesenberry v. Estep*, 142 W. Va. 426, 95 S.E.2d 832 (1956).

Standards may be implied from the statutory purpose. *People v. Wright*, 30 Cal. 3d 705, 713, 180 Cal. Rptr. 196, 639 P.2d 267 (1982). Here, the statutory purpose is set forth in K.S.A. 40-2401, as follows:

"The purpose of this act is to regulate trade practices in the business of insurance . . . by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined."

Here, the legislative purpose for the statute is evident.

The modern trend, which we ascribe to, is to require less detailed standards and guidance to the administrative agencies in order to facilitate the administration of laws in areas of complex social and economic problems. See *Kalbfell v. City of St. Louis*, 357 Mo. 986, 993, 211 S.W.2d 911 (1948); *Ward v. Scott*, 11 N.J. 117, 93 A.2d 385 (1952); *City of Utica v. Water Control Bd.*, 5 N.Y.2d 164, 182 N.Y.S.2d 584, 156 N.E.2d 301 (1959).

See also Pierce, Shapiro & Verkuil, Administrative Law & Process, § 3.4.5 (1985).

We conclude that subparagraph (f) gives sufficient standards to govern the rulemaking power of the insurance commissioner; thus, the legislature did not violate the separation of powers doctrine.

### 3. Equal Protection

Subparagraph (f) exempts from its prohibition those "transactions involving real estate located in a county that has a population . . . of 10,000 or less." The trial court found that this classification was not rationally related to the purpose of the statute and, therefore, violated the equal protection clause of the Kansas Constitution.

The first step in an equal protection analysis is to determine what level of scrutiny applies. The classification in K.S.A. 1989 Supp. 40-2404b(14)(f) is based on geography and population— counties with populations of less than 10,000 are exempted from part (f). Here, because no "suspect classification" or "quasi-suspect" classification has been set forth and because no fundamental rights are at issue, the least strict level of scrutiny is appropriate. Under the least strict level of scrutiny, legislation is valid so long as it is reasonably (or rationally) related to a legitimate state interest. *F. Arthur Stone & Sons v. Gibson*, 230 Kan. 224, 227, 630 P.2d 1164 (1981). The United States Supreme Court has said:

"The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961).

See *Brown v. Wichita State University*, 219 Kan. 2, 13, 547 P.2d 1015 (1976).

When a statute is under judicial review, it is the constitutionality of the statute, not the wisdom of the legislature in enacting it, that is at issue. *Caban v. Mohammad*, 441 U.S. 380, 392 n.13, 60 L. Ed. 2d 297, 99 S. Ct. 1760 (1979). The fact that the legislative response to a perceived societal evil is not a perfect response is not a sufficient reason to strike down a statute. See

*Dandridge v. Williams,* 397 U.S. 471, 501, 25 L. Ed. 2d 491, 90 S. Ct. 1153, *reh. denied* 398 U.S. 914 (1970).

The purpose of the Unfair Trade Practices Act is to prevent unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. K.S.A. 1989 Supp. 40-2404b. The purpose of (14)(e) and (f) is to stimulate competition by decreasing vertical integration between producers of title business and title insurers.

There are obvious reasons for the exception provided in part (f). In less populated counties, there is a limited market for title insurance and, generally, there will be only two title insurers and in the smaller counties only one. In order to survive in the less populated county, the title insurer is generally tied to another financial entity. This exception promotes the availability of title insurance in these counties. If one of the agents is removed from competition, there would generally be no competition in a county having a population of less than 10,000 people and, in those counties having only one title insurance agent, there would be no title insurance available. The very nature of the title insurance business is such that, generally, it is not economically feasible for an agent for a title insurance company to cross county lines. There is a rational basis for this classification.

As in all cases, one can argue that the drawn line is arbitrary. The legislature is not required to draw a perfect line and can always later refine the one it has drawn if circumstances warrant it.

Guardian argues that *State ex rel. Stephan v. Smith,* 242 Kan. 336, 747 P.2d 816 (1987), stands for the proposition that geographical classifications are, by nature, violative of equal protection. We disagree. In *Smith,* this court held that the state indigent criminal defense system violated equal protection. Under the system, attorneys from less populated areas were required to donate their services to a greater extent than attorneys living in the more populated areas. The holding in *Smith,* however, was that under the facts there at issue, there was no basis for that classification.

Here, there is a rational basis for the classification adopted by the legislature. Thus, the exception for less populated counties does not violate equal protection.

Reversed.