(932 P.2d 1034)

No. 75,357

MICHAEL L. ALKIRE, *et al.*, *Appellants*, v. PAUL J. FISSEL and SHARON D. JAMES, *Appellees*.

Opinion filed February 14, 1997.

*W. Thomas Gilman*, of Redmond, Redmond & Nazar, of Wichita, for appellants.

*John C. Greiner*, of Graydon, Head & Ritchey, of Cincinnati, Ohio, and *Teresa J. James*, of Adams, Jones, Robinson & Malone, of Wichita, for appellees.

Before GREEN, P.J., PADDOCK, S.J., and JAMES J. SMITH, District Judge, assigned.

GREEN, J.: Fifteen former employees of Mycro-Tek, Inc., appeal from an unsuccessful action brought against two former directors of Mycro-Tek for wages, accrued vacation pay, and penalties under the Kansas Wage Payment Act, K.S.A. 44-313 *et seq.* Specifically, the employees appeal the trial court's order granting the directors' motion for summary judgment and the order denying the employees' motions for partial summary judgment. We affirm.

Experiencing severe financial trouble, on January 22, 1993, My-cro-Tek announced that it would reduce the wages of all employees by 20 percent beginning the following week (January 25 through January 29). The employees were paid 80 percent of their salaries for that week. In an attempt to further reduce expenses, Mycro-Tek laid off several workers on February 5, 1993. Finally, on February 10, 1993, Mycro-Tek filed a bankruptcy petition.

Former Mycro-Tek employees brought an action under the Kansas Wage Payment Act seeking: (1) wages for the week of January 25, 1993, through January 29, 1993; (2) accrued and unpaid vacation pay; (3) severance pay; (4) the statutory penalty imposed by K.S.A. 44-315(b); and (5) interest imposed by K.S.A. 44-323(a). The employees' claims were removed to the United States District Court. The United States District Court retained jurisdiction over the severance pay claim and remanded the remaining claims to the trial court.

The employees filed a motion for partial summary judgment. The issue raised by the motion was: Were the employees barred from recovering against the directors the penalty allowed by K.S.A. 44-315(b) as a result of Mycro-Tek's bankruptcy filing? The motion described the issue as a pure question of law. The employees further stated that there were no factual disputes. The trial court denied the motion and specifically found that the directors could not be "liable for additional damages under K.S.A. 44-315(b) for any period following the filing of the Mycro-Tek, Inc. bankruptcy petition."

The directors then filed a motion for summary judgment seeking an order barring the employees from pursuing additional damages or penalties under K.S.A. 44-315(b). In addition, the directors sought an order that Mycro-Tek's 20 percent pay cut did not violate the Kansas Wage Payment Act and that the employees' claims for accrued vacation pay were preempted by the United States Bankruptcy Code.

The employees filed a second motion for partial summary judgment in which they argued that Mycro-Tek's 20 percent wage reduction did not conform to the procedures set out in the personnel policy manual, rendering it unenforceable. In granting the direc-

tors' motion for summary judgment in its entirety, the trial court also ruled that the employees' second motion for partial summary judgment was moot. The employees timely appeal both orders denying their motions for partial summary judgment as well as the court's order granting the directors' motion for summary judgment.

The trial court's ruling granting the directors' motion for summary judgment encompassed all of the issues in this case. The trial court ruled as follows:

"1. In its previous ruling denying Plaintiffs' Motion for Partial Summary Judgment, this Court found as a matter of law, for purposes of the penalty provided by K.S.A. §44-315(b) any alleged failure to pay wages by Mycro-Tek ended upon Mycro-Tek's bankruptcy filing on February 10, 1993. Thus, because liability for corporate officers or agents under K.S.A. §44-323(a) requires a violation by the corporation, neither defendant could be liable for any penalty after February 10, 1993. For this reason, and based on the doctrine of the law of the case, defendants are entitled to summary judgment in their favor on Plaintiffs' claims for any penalty under K.S.A. §44-315(b);

"2. The undisputed facts set forth in the record disclose that on January 22, 1993, Mycro-Tek's board of directors adopted a valid and enforceable 20% wage reduction for all employees and further disclose that Mycro-Tek's president Allan Allford announced the wage reduction to Mycro-Tek's employees on January 22, 1993, in advance of the January 25 work week. It is further undisputed that Plaintiffs were paid in full the reduced wage for the week of January 25, 1993. It is further undisputed that each plaintiff was an at-will employee of Mycro-Tek. As a matter of law, an at-will employer does not violate the Kansas Wage Payment Act, K.S.A. § 44-313 *et seq.*, by unilaterally adopting a wage reduction in advance of the work week. For this reason, neither Mycro-Tek nor the individual defendants violated the Kansas Wage Act by implementing the 20% wage reduction, and defendants are entitled to judgment in their favor as a matter of law on plaintiffs' claims for wages for the week of January 25, 1993.

"3. With respect to the claims of plaintiffs . . . for accrued unpaid vacation it is undisputed that the right to recover such payment arose, if at all, after Mycro-Tek's bankruptcy filing on February 10, 1993. This claim for accrued, unpaid vacation, which arose while Mycro-Tek was a debtor in bankruptcy, and the priority of that payment vis-a-vis claims of other creditors was subject to the exclusive jurisdiction of the United States Bankruptcy Code, which preempts the operation of the Kansas Wage Payment Act, K.S.A. § 44-313 *et seq.* For this reason, defendants are entitled to judgment in their favor as a matter of law . . . ."

The employees argue that the trial court erred in granting the directors' motion for summary judgment. In *Mitzner v. State Dept.*

*of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995), our Supreme Court reiterated the following standard of review of a motion for summary judgment:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]"

With regard to the trial court's ruling on issue number one (whether the employees could seek penalties pursuant to K.S.A. 44-315[b]), the employees contend that the trial court erroneously interpreted K.S.A. 44-315 and K.S.A. 44-323, which provide as follows:

K.S.A. 44-315:

"(a) Whenever an employer discharges an employee or whenever an employee quits or resigns, the employer shall pay the employee's earned wages not later than the next regular payday upon which he or she would have been paid if still employed as provided under K.S.A. 44-314 either through the regular pay channels or by mail postmarked within the deadlines herein specified if requested by the employee.

"(b) If an employer knowingly fails to pay an employee wages as required under subsection (a) of this section, such employer shall be liable therefor and shall be additionally liable for damages in the fixed amount of one percent (1%) of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller, except that such penalty shall apply only in the event of a willful violation. For the purpose of such additional damages, the failure to pay shall not be deemed to continue after the date of the filing of a petition in bankruptcy with respect to the employer if he or she is adjudicated bankrupt upon such petition nor shall it be deemed to continue after an appeal is filed under K.S.A. 44-322a, until the decision on appeal becomes final."

K.S.A. 44-323:

"(a) At the discretion of the presiding officer, interest, as provided under K.S.A. 16-201, and amendments thereto, may be assessed on wage claims found to be due and owing from the date the wages were due as defined in K.S.A. 44-314, and amendments thereto.

"(b) In case of violation of K.S.A. 44-314, and amendments thereto or 44-315, and amendments thereto, by a corporate employer, either the corporation or any officer thereof or any agent having the management of the corporation who knowingly permits the corporation to engage in such violation shall be deemed the employer for purposes of this act."

The employees assert that the statute may be construed such that the directors are "employers" under K.S.A. 44-323(b). The employees argue that such a construction allows them to proceed against the directors for damages under K.S.A. 44-315(b). In their brief, the employees argue that K.S.A. 44-315 and 44-323 should be analyzed as follows:

"First, it must be determined if there was a failure to pay wages as required by K.S.A. 44-315(a). . . Second, the 'employer' must be determined. To make that determination, K.S.A. 44-323(b) provides that in the case of a violation of K.S.A. 44-315 by a corporate employer, 'either the corporation or any officer thereof or any agent having the management of the corporation who knowingly permits the corporation to engage in such violation shall be deemed the employer for purposes of this act.' . . .

". . . If the plaintiffs can prove that the 'employer' willfully violated K.S.A. 44-315(b), the penalty can be assessed against the employer . . . ."

The employees concede that the accrual of the employer's additional liability or penalty stops when the employer files bankruptcy. However, they contend that the individual director's penalty continues to accrue where a corporate employer files bankruptcy because an individual is deemed to be the "employer" under K.S.A. 44-315(b). The employees argue that such construction is consistent with the statute's purpose of protecting wage earners.

Conversely, the directors argue:

"K.S.A. 44-323(b) establishes the parameters of obtaining from individual corporate officers or agents the additional damages of K.S.A. 44-315(b). Under the plain language of this statute the corporate employer must violate the statute for the individual to incur liability.

"By definition, the failure to pay does not continue after the corporate employer files bankruptcy. K.S.A. 44-315(b). Thus, if the corporate employer files bankruptcy, then the corporate employer is not committing the violation of continued failure to pay wages. . . . If the corporate employer is not committing the violation, the individual corporate officers cannot, by statutory definition, be liable for additional damages under K.S.A. 44-315(b)."

Although the trial court found the directors' argument persuasive, this court is not bound by the decision of the trial court on issues of statutory interpretation. "Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The parties concede that there are no Kansas cases interpreting this issue. However, the parties cite *State ex rel. McCain v. Erdman,* 4 Kan. App. 2d 375, Syl. ¶ 4, 607 P.2d 78 (1980). In *Erdman,* this court held the sole officer of a corporation liable for the corporation's violation of the Kansas Wage Payment Act. Because the officer had given the employee a bad check and assured him that he would be paid, the court found that the officer had knowingly permitted the corporation to violate the statute. The officer was deemed the employer for purposes of K.S.A. 44-315. 4 Kan. App. 2d at 377. However, neither the individual officer nor the corporation filed bankruptcy in *Erdman.* Therefore, *Erdman* is not helpful in determining the effect of the corporation's bankruptcy in this case.

Both the employees and the directors form arguments from general rules of statutory interpretation. The employees emphasize that "'[i]t is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained.'" *City of Wichita v. 200 South Broadway,* 253 Kan. 434, 436, 855 P.2d 956 (1993). The employees argue that the purpose of the statute is to protect wage earners and that their interpretation of the statute is consistent with that purpose. They argue at length that the trial court's interpretation of the statute is contrary to that intent. On the other hand, the directors argue that the statute's meaning is clear. They contend that "[w]hen a statute is plain and unambiguous, the court

must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

Although both interpretations of the statute are plausible, the employees' attempts to construe the directors as "employers" under K.S.A. 44-323(b) requires a tortured and contorted reading of the statute. When read as a whole, the statute is consistent with the trial court's ruling. The following rules of construction support the trial court's interpretation of the statute:

" 'The several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire statute if it is reasonably possible to do so.' " *Guardian Title Co. v. Bell*, 248 Kan. 146, 151, 805 P.2d 33 (1991).

" 'Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' " *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992).

Consequently, we determine that Mycro-Tek, and not the directors, was the "employer" under the Kansas Wage Payment Act.

The employees also argue that the trial court erred in granting summary judgment as to whether Mycro-Tek announced a valid pay cut. The employees argue that this issue was not ripe for summary judgment because there are material issues of fact in dispute as to whether Mycro-Tek announced a pay cut or a pay deferment. Secondly, the employees argue that the announcement did not conform with the procedures set out in the personnel policy manual.

The record does not support those contentions. In their motion in opposition to the directors' motion for summary judgment, the employees argued that Mycro-Tek's announcement could be construed as a pay deferment. In support, the employees attached the following transcript of an announcement given January 22, 1993, by Allan Allford, president of Mycro-Tek:

"First of all, I'm sorry it's so late in the day, but we just got finished with a Board meeting so I didn't have any news to point out. Thank you for all of your support. As I said in the mail message, we got some attention in Topeka and there was some reaction to that. I don't know yet whether it was good or bad, but it certainly got their attention. Here's the deal. Morris-Anderson will be making a recom-

mendation to KPERS on Monday morning that proposes that the bank and KPERS will jointly fund operations for next week. It will be a very, very minimal effort on their part in terms of what they will fund. Basically, they have agreed to fund operating expenses required to keep the doors open, the lights on, and the telephones ringing. Payroll tax expenses, sales tax expenses, all of the governmental obligations, and 80 percent of our compensation. There are no assurances by the Board, there are no assurances by the pension fund or by Morris-Anderson at this point that those will be paid next week. The only assurance we have is that they will make that recommendation to KPERS. The reason I was late is because I was on the telephone to the bank. The bank has indicated a willingness to participate on a 50/50 basis and are [sic] extremely disturbed that the pension fund or that the investment advisors have chosen this direction. What does that mean? That means that if you come to work on Monday, literally when you get here, there are no assurances that you will be paid. If you are paid, you will be paid at a rate of 80 percent of what you're normally paid. By the end of the day Monday, we should know whether or not KPERS has accepted or rejected that proposal and there will be more assurances about whether or not they will pay the funds throughout the end of the week. In terms of the 20 percent that we may be giving up, we were unable to get any assurances that they would ever be paid back or recuperated [sic] in any way. Not to say that it won't, but we didn't get any assurances that it would."

The employees' argument that this statement indicates that Mycro-Tek announced a pay deferment is flawed. First, the employees admitted in their uncontroverted statement of facts that they were at-will employees. Second, the trial court's conclusion that Mycro-Tek adopted a valid and enforceable 20 percent wage reduction for all employees was based on undisputed facts in the record. Accordingly, this issue was ripe for summary judgment.

The employees' argument that the 20 percent pay cut was unenforceable based upon the personnel policy manual is tenuous. The manual details procedures for increasing and decreasing individual employee salaries. Preceding a signature line, the personnel policy manual contains the following statement: "I have read the Personnel Policy Manual and understand all of the policies contained therein. I acknowledge that I understand that the policies described are subject to change and are not conditions of employment nor is the language intended to create a contract between Mycro-Tek, Inc. and its employees." The manual further provides: "THE TERMS OF THIS SECTION ARE NOT INTENDED TO IN ANY WAY AFFECT THE RIGHT OF MYCRO-TEK TO

TERMINATE EMPLOYEES AT THE WILL OF MYCRO-TEK."

Although such disclaimers are not conclusive evidence of an unqualified employment-at-will relationship, the employees do not argue that their at-will status was somehow qualified by the personnel policy manual. See *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841 (1987). Based upon the employees' admitted status as at-will employees and the disclaimers included in the manual, the trial court correctly concluded that Mycro-Tek announced a valid pay cut. Moreover, neither K.S.A. 44-315 nor K.S.A. 44-323 addresses wage or pay cuts. Therefore, the trial court correctly ruled that the statutes do not prohibit at-will employee pay cuts announced before wages are earned.

Finally, the employees argue that the trial court erred in determining that their claims for accrued, unpaid vacation pay are controlled by the United States Bankruptcy Code. The employees argue that the Bankruptcy Code applies to the rights of debtors and, therefore, applies to creditors of Mycro-Tek. However, the employees contend that Mycro-Tek's bankruptcy does not protect the individual directors. Because we previously determined that Mycro-Tek was the "employer" under the Kansas Wage Payment Act, the provisions of the United States Bankruptcy Code controlled the priority of all claims.

Affirmed.