The Honorable Doug Patterson State Representative, 28th District State Capitol, Room 174-W Topeka, Kansas 66612
Dear Representative Patterson:
You inquire about the Kansas controlled business law, K.S.A. 2002 Supp. 40-2404(14), paragraphs (e) and (f). Specifically, you ask three questions that we will address in the order asked. In the course of considering your questions, this office received written input from the Kansas Association of Realtors, the Executive Director for the Kansas Real Estate Commission and the Kansas Land Title Association. While important policy issues were raised both for and against continued operation of K.S.A. 2002 Supp. 40-2404(14)(e) and (f), our office is constrained to dealing only with the legal issues raised. It is the prerogative of the Legislature to determine the policy issues.
Do the remaining viable provisions of K.S.A. 2002 Supp. 40-2404(14)(e) and (f) violate the Equal Protection Clause of the U.S. Constitution?[1]
K.S.A. 2002 Supp. 40-2404(14)(e) and (f) (also referred to as the Kansas controlled or affiliated business law) provide as follows:
 "The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
"(14) Rebates and other inducements in title insurance.
. . . .
 "(e) No title insurer or title agent may accept any order for, issue a title insurance policy to, or provide services to, an applicant if it knows or has reason to believe that the applicant was referred to it by any producer of title business or by any associate of such producer, where the producer, the associate, or both, have a financial interest in the title insurer or title agent to which business is referred unless the producer has disclosed to the buyer, seller and lender the financial interest of the producer of title business or associate referring the title insurance business.
 "(f) No title insurer or title agent may accept an order for title insurance business, issue a title insurance policy, or receive or retain any premium, or charge in connection with any transaction if: (i) The title insurer or title agent knows or has reason to believe that the transaction will constitute controlled business for that title insurer or title agent, and (ii) 20% or more of the gross operating revenue of that title insurer or title agent during the six full calendar months immediately preceding the month in which the transaction takes place is derived from controlled business. The prohibitions contained in this
 subparagraph shall not apply to transactions involving real estate located in a county that has a population, as shown by the last preceding decennial census, of 10,000 or less."
Subsection (14)(f) prohibits a title insurer or title agent from deriving more than 20 percent of its gross operating revenue (during the past six months) from business generated or referred by a producer of title business, or an affiliate of such a producer, having a financial interest in the title insurance agency. The prohibition applies to transactions involving real estate located in counties that have a population over10,000.
LIMITED APPLICATION OF THE CONTROLLED BUSINESS LAW
The Kansas Insurance Department has opined that K.S.A. 2002 Supp.40-2404(14)(f) is preempted by federal law, the Gramm-Leach-Bliley Act[2]
(GLBA), insofar as it applies to a depository institution or affiliate. Although the prohibition in subsection (14)(f) does not explicitly prevent or restrict a depository institution or affiliate from owning a title insurance agency, the Insurance Department reasoned that the operating revenue restrictions of the controlled business law are a "disincentive to such affiliation" and the law is thus preempted by Section 104(d)(2)(A) of the GLBA[3] because it prevents or significantly interferes with the ability of a depository institution or affiliate to engage in title insurance sales. For purposes of this opinion, we assume depository institutions and their affiliates, as defined in the GLBA, are not subject to K.S.A. 2002 Supp. 40-2404(14)(f).
The application of this federal preemption has the effect of removing certain depository institutions and affiliates from the classification established by K.S.A. 2002 Supp. 40-2404, thus diminishing the class of those who are subject to its prohibition. The preemption, however, does not totally destroy the classification by state law[4] because the prohibition still applies to those members of the class not affected by the preemption. At issue is whether the resulting classification in K.S.A. 2002 Supp. 40-2404(14)(f), created by the application of federal law, violates the equal protection clause of the United States Constitution.
EQUAL PROTECTION ANALYSIS
The controlled business statute is economic legislation that affects the property rights of title insurance companies or agents in a heavily regulated industry.[5] As such, the least strict level of scrutiny applies and, consequently, the statute is valid unless it "rests on grounds wholly irrelevant to the achievement of the State's objective."[6] The United States Supreme Court has described the least strict level of scrutiny such that a classification will not be set aside "if any state of facts reasonably may be conceived to justify it."[7]
In other words, the State need not set forth any evidence to show its rationality, as long as a Court may conceive of facts that reasonably justify the classification. This is so because the Court is a guardian of the Constitution, not a super-legislative body that can substitute its views for that of the Legislature.[8] Moreover, equal protection of the law guaranteed by the United States Constitution does not require that the Legislature choose between attacking part of a perceived evil or danger or not attacking the evil at all.[9]
In light of the scrutiny to be applied, we must determine whether there is any conceivable legitimate state goal furthered by the controlled business statute and whether the Legislature's means of achieving the goal is rationally related to that goal. K.S.A. 2002 Supp. 40-2404(14)(f) is aimed at providing consumers of title business with enhanced competition by decreasing vertical integration between producers of title business and title insurers.[10] This is a legitimate State goal. The classification established by the provision in question is a rational way to provide the competition in order to protect the consumer of title business and thus does not violate the equal protection clause of the United States Constitution.
It has been suggested that the classification is ineffective because it has been diminished twice, first by the statute's own limited application to counties having a population greater than 10,000, and second by the application of federal law exempting federal depositories. The argument has failed when applied to the distinction the statute draws regarding county population. In 1991, the statute sustained an equal protection challenge based on its application to only transactions involving real estate located in counties with a population of10,000 or more. InGuardian Title Co. v. Bell,[11] the Kansas Supreme Court found that the classification [excepting less populated counties] is rationally related to the objective of decreasing vertical integration between producers of title business and title insurers. The Court addressed the argument that the distinction is arbitrarily drawn by stating: "The fact that the legislative response to a perceived societal evil is not a perfect response is not a sufficient reason to strike down a statute. . . . The legislature is not required to draw a perfect line and can always later refine the one it has drawn if circumstances warrant it."[12]
Similarly, we must find that the diminished classification of title insurers affected does not render the statute unconstitutional. The Legislature has had an opportunity to amend the prohibition in light of the GLBA preemption of certain of its prescriptions but, while it has considered taking such action, it has not yet done so evidencing an intent to continue the prohibition to the extent it is not preempted by the GLBA. The classification remains related to the legitimate goal of stimulating competition and protecting the consumer; whether more or better protection of the consumer is warranted is a policy question not within the purview of an equal protection challenge and analysis. In sum, it is our opinion that the classification established by the statute, and the affect the GLBA has on it, does not render the statute unconstitutional.
Are the controlled business provisions of K.S.A. 2002 Supp. 40-2404preempted by the federal Real Estate Settlement Procedures Act of 1974(RESPA)?[13]
PREEMPTION GENERALLY
Congress has the power to preempt state law.[14] Preemption may be either express or implied.[15] Implied preemption can occur 1) when there exists an actual conflict between federal and state law; 2) where one cannot comply with both federal and state law; 3) where Congress has occupied the entire field of regulation; or (4) when the state law stands as an obstacle to the accomplishment of federal goals.[16] However, RESPA expressly addresses preemption, so it is not necessary to apply the general tests to determine whether preemption exists. "In interpreting the extent of express preemption, courts must be mindful that there is a strong presumption against preemption or displacement of state laws."[17]
RESPA
Congress enacted RESPA to insure that consumers receive timely information about the nature and costs involved in the settlement process for residential real estate and to protect them from unnecessarily high settlement charges as the result of kickbacks or referral fees.[18]
RESPA specifically preempts only state laws that are inconsistent with its provisions to the extent of the inconsistency;[19] a state law or regulation that imposes more stringent limitations, thereby giving greater protection to the consumer, is not to be considered inconsistent with RESPA.[20] Thus the controlled business law would be preempted by RESPA only if it is inconsistent with RESPA, and only to the extent that it is inconsistent, unless the controlled business law provides greater protection to the consumer than does RESPA. The federal agency charged with administering RESPA has opined that statutes are "inconsistent" only when compliance with one results in violation of the other (e.g. compliance with both cannot be achieved).[21]
Section 2607(d)(4) of RESPA permits controlled business arrangements provided that the producer of title business does not require the use of any particular provider of settlement services, that the producer discloses both the business arrangement he has with the title insurer and the title insurer's charges or range of charges, and that the only thing of value that is received from the arrangement is a return on the ownership interest or franchise relationship.[22] RESPA does not require controlled business arrangements; it permits them under certain circumstances. Thus, compliance with K.S.A. 40-2404(14)(f) would not cause a title agency or insurer to be in violation of RESPA. Based on the federal definition of "inconsistency," K.S.A. 40-2404(14)(f) is not inconsistent with this provision of RESPA and is therefore not preempted by it. Further, K.S.A. 2002 Supp. 40-2404(14)(f) is more stringent than RESPA; RESPA was not enacted to protect title insurers, it was enacted to protect consumers.[23] Placing additional restrictions on title insurers would thus not appear to be inconsistent with the goals and purposes of RESPA. Because we have determined that the provisions are not "inconsistent," we need not determine whether K.S.A. 2002 Supp.40-2404(14)(f) provides for greater protection for consumers than does RESPA.
Your final question, whether these constitutional challenges affect the statute's continued enforcement, must be answered in the negative in light of our conclusions to your first two questions.
In conclusion, because we are unable to conclude that there is no possible rational basis for continued operation of K.S.A. 2002 Supp.40-2404(14)(e) and (f) due to partial preemption by the federal Gramm-Leach-Bliley Act, we must presume its constitutionality under an equal protection analysis. Further, it is our opinion that the federal Real Estate Settlement Procedures Act does not preempt K.S.A. 2002 Supp.40-2404(14)(f).
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
PK:JLM:jm
[1] U.S. Const., Amend. 14.
[2] The Financial Services Modernization Act of 1999, relevant parts codified at 15 U.S.C. § 6701.
[3] 15 U.S.C. § 6701(d)(2)(A).
[4] See In the Matter of the Appeal of ANR Pipeline Co., 254 Kan. 534,545 (1994).
[5] Guardian Title Co. v. Bell, 248 Kan. 146, 152 (1991).
[6] Leiker v. Gafford, 245 Kan. 325, 363 (1989); Thompson v. KFB Ins.Co., 252 Kan. 1010, 1017-18, (1993). Heller v. Doe, 509 U.S. 312,113 S.Ct. 2637, 2645, 125 L.Ed.2d 257 (1993).
[7] Guardian Title Co. 248 Kan. at 155, citing McGowan v. Maryland,366 U.S. 420, 425-26, 6 L.Ed.2d 393, 81 S.Ct. 1101 (1961).
[8] City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432,105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); Blue v. McBride, 252 Kan. 894,906-10 (1993).
[9] Manzanares v. Bell, 214 Kan. 589, 615 (1974).
[10] Guardian Title Co. v. Bell, 248 Kan. 146, 156 (1991).
[11] 248 Kan. 146 (1991).
[12] Id. at 155-156.
[13] 12 U.S.C. § 2601 et seq.; Section 18 of RESPA,12 U.S.C. § 2616, preemption provision
[14] U.S. Const., Art. 6, Cl. 2.
[15] Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 738,105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).
[16] Doty v. Frontier Communications Inc., ___ Kan. ___, 36 P.3d 250
(2001); First Nat. Bank and Trust v. Miami County Co-Op Ass'n, 257 Kan. 989
(1995).
[17] Washington Mutual Bank, FA, v. Superior Court, 89 Cal.Rptr.2d 560,567 (Cal.App. 1999), citing Cipollone v. Liggett Group, Inc., 505 U.S. 504,523, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).
[18] 12 U.S.C. § 2601.
[19] 12 U.S.C. § 2616 provides: "This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. . . ." See also24 C.F.R. § 3500.13(a).
[20] 12 U.S.C. § 2607(d)(6) and 2616. See also24 C.F.R. § 3500.13(b)(1).
[21] Washington Mutual, supra note 17, at 569, citing Department of Housing and Urban Develop-ment, Informal Opinion No. 75 (Jan. 29, 1981).
[22] See also 24 C.F.R. § 3500.15.
[23] 12 U.S.C. § 2601(a).